IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE

------------------------------------------------------------x
In re:                                          : Chapter 11
                                                :
THQ INC., *et al.*,                             : Case No. 12-13398 (MFW)
                                                :
        Debtors.[1]                           : Jointly Administered
                                                :
                                                : Hearing Date: August 19, 2013 at 10:30 a.m. (ET)
------------------------------------------------------------x Reply Deadline: August 12, 2013 at 4:00 p.m. (ET)

## RESPONSE AND OBJECTION TO MOTION TO RECONSIDER ORDER ESTIMATING THE CLAIM FILED BY CHRISTOPHER ESCOBEDO FOR ALL PURPOSES AND ESTABLISHING DISPUTED INTERIM DISTRIBUTIONS RESERVE WITH RESPECT THERETO

Escobedo's "Motion to Reconsider" [D.I. 1024] (the "**Motion to Reconsider**") should be denied, because it presents no new evidence or law and simply rehashes arguments that this Court has already rejected. A Motion to Reconsider is "not to be used as an opportunity to relitigate the case." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011). Escobedo simply reargues the very same legal issues already rejected by this Court. He also renews his request for more time to take discovery, which he included in his original objection to the Motion to Estimate. The Motion to Reconsider raises nothing new and should be denied for the reasons set forth below:

### Background

1.    Escobedo[2] filed a proof of general unsecured claim in the amount of $4.16 million [Claim No. 511] (the "**Unsecured Claim**"). Escobedo filed an administrative claim in an

---

[1] The Debtors in these chapter 11 cases and the last four digits of each Debtor's taxpayer identification number are as follows: THQ Inc. (1686); THQ Digital Studios Phoenix, Inc. (1056); THQ Wireless, Inc. (7991); Volition, Inc. (4944); and Vigil Games, Inc. (8651). The Debtors' principal offices are located at 29903 Agoura Road, Agoura Hills, CA 91301.

[2] All capitalized terms not defined in this Objection shall have the meanings set forth in the *Debtors' Motion for Entry of an Order Estimating the Claim Filed by Christopher Escobedo for all Purposes*

01:14002446.2

unliquidated amount asserting that he was entitled to 2% of all post-petition net sales of the Games as an administrative claim [Claim No. 703] (the "**Administrative Claim**," and together with the Unsecured Claim, "**Escobedo's Claims**").

2. On June 25, 2013, the Debtors filed the Motion to Estimate, seeking an order of this Court estimating Escobedo's Unsecured Claim at $0 (or at the most $22,500, which was the total payment made to Carlos Condit, whose likeness is alleged to contain an image of the Lion Tattoo created by Escobedo). On June 27, 2013, the Debtors filed their *Supplement to Debtors' Motion for Entry of an Order Estimating the Claim Filed by Christopher Escobedo for All Purposes and Establishing Disputed Interim Distributions Reserve with Respect Thereto* [D.I. 799] (the "**Supplemental Estimation Motion**"), asking that both of Escobedo's Claims be estimated at $0 for all purposes.

3. On July 9, 2013, Escobedo filed a response and objection, among other things, asking the court to allow discovery into the Debtors' revenue from the Games and any license agreement that THQI entered into with other parties for use of material in the Games [D.I. 867] ("**Escobedo's Objection**"). Escobedo did not choose to propound any discovery prior to the hearing on the Motion to Estimate. On July 11, 2013, THQI filed a reply, reiterating its position that Escobedo is entitled to at most $22,500 and rebutting every one of the arguments in Escobedo's Objection [D.I. 894].

4. On July 16, 2013, the Court announced its ruling to limit both of Escobedo's Claims to no more than $22,500. On July 17, 2013, the Court entered its *Order Estimating the Claim Filed by Christopher Escobedo at Zero for All Purposes and Establishing Disputed Interim Distributions Reserve With Respect Thereto* [D.I. 931] (the "**Order**") granting the

---

*and Establishing Disputed Interim Distributions Reserve with Respect Thereto* [D.I. 784] (as supplemented by D.I. 799, the "**Motion to Estimate**").

01:14002446.2

Motion to Estimate and estimating Escobedo's Unsecured Claim at no more than $22,500. The proposed order lodged with the Court inadvertently mentioned only the Unsecured Claim. The Debtors respectfully request that, in denying the Motion to Reconsider, the Court correct the Order and expressly provide that Escobedo's Unsecured Claim is estimated at no more than $22,500 and his Administrative Claim is estimated at $0. This modification corrects a clerical error in the Order and, therefore, is permitted under Fed. R. Bankr. P. 9024 ("**Rule 9024**") and Fed.R.Civ.P. 60(a).

5.  On July 31, 2013, an out-of-state law firm filed the Motion to Reconsider on behalf of Escobedo, without any notice of motion or hearing, asking this Court to reconsider its ruling pursuant to 11 U.S.C. § 502(j) or, alternatively, Fed. R. Bankr. P. 9023 ("**Rule 9023**").[3] The Motion to Reconsider is frivolous, because it does not even purport to present anything new.

## Argument

**A.    Legal Standard**

6.  Escobedo cites to both 11 U.S.C. § 502(j) and Rule 9023, but ignores the requirements for a motion under Section 502(j) or Rule 9023. The legal standard is the same whether the Motion to Reconsider relies on Section 502(j) or Rule 9023. Reconsideration of an entered order based on a motion that is filed within the 14-day appeal period is considered under the same standard as Fed. R. Civ. Proc. § 59. *In re Terrestar Networks Inc.*, No. 10-15446, 2013

---

[3] Escobedo's Motion to Reconsider failed to comply with the requirements for notice and a hearing under Local Rule 9013-1. The lawyer that signed and filed the Motion to Reconsider is not admitted before this Court and has not sought admission pro hac vice or associated with a lawyer admitted to practice before this Court. She asserts that she is entitled to affirmatively move for relief from this Court under Local Bankruptcy Rule 9010-1(e)(iii), which provides that "Parties (pro se or through out of state counsel) may file or prosecute a proof of claim or a response to their claim. The Court may, however, direct the claimant to consult with Delaware counsel if the claim litigation will involve extensive discovery or trial time." The Debtors respectfully submit that out of state counsel cannot file a motion seeking discovery and affirmative relief from this Court, under this narrow exception to the general requirement that only counsel admitted in this District (either directly or pro hac vice) can appear before this Court. The Motion to Reconsider should, therefore, be stricken as improperly filed.

01:14002446.2

Bankr. LEXIS 745 at *8 (Bankr. S.D.N.Y. Feb. 28, 2013) ("[W]hen deciding a motion under section 502(j) of the Bankruptcy Code—a Motion to Reconsider of a prior order—the court should apply the same analysis that it would to a motion under Fed. R. Bankr. P. 9023 (incorporating Fed. R. Civ. P. 59) . . . .") (parenthetical in original); *Aguilar v. Abraham*, 861 F.2d 873, 874 (5th Cir. 1988) ("[W]e hold that a Rule 3008 motion filed within the ten day period [since extended to fourteen (14) days] is in fact analogous to a Rule 9023, or Fed.R.Civ.P. 59 motion.").

7.   The Third Circuit Court of Appeals has held that "[a] proper Rule 59(e) motion . . . must rely on one of three grounds: (1) an intervening change in controlling law; (2) the availability of new evidence; or (3) the need to correct clear error of law or prevent manifest injustice." *Lazarandis v. Wehmer*, 591 F.3d 666, 669 (3d Cir. 2010). It is an "extraordinary remedy" that should be "used sparingly." *In re Brewster*, No. 10-54254, 2011 Bankr. LEXIS 3640 at *5 (Bankr. W.D. Tex. Sept. 23, 2011) (quoting *Shaw v. Hardberger*, 2010 U.S. Dist. LEXIS 3267, at *4 (W.D. Tex. Jan. 15, 2010)). "The scope of a Motion to Reconsider . . . is extremely limited. Such motions are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Blystone v. Horn*, 664 F.3d at 415. *See also N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995); *EBS Pension, LLC v. Edison Bros. Stores, Inc. (In re Edison Bros. Stores, Inc.)*, 268 B.R. 409, 412 (Bankr. Del. 2001) (denying a reconsideration motion that presented nothing new, because "[r]econsideration under Rule 9023 . . . is an extraordinary remedy in which the movant must do more than simply reargue the facts or legal arguments raised previously.").

8.  A motion to reconsider cannot be used to request discovery, especially because Escobedo's Objection expressly argued that discovery was necessary and that argument has already been rejected by this Court. *Blystone v. Horn*, 664 F.3d at 416 n.14.

### B.  The Motion to Reconsider Does Not Present Any New Facts or Change of Law

9.  The Motion to Reconsider does not even address what legal standard must be satisfied to justify reconsideration, much less attempt to show that Escobedo has met the applicable standard. Escobedo does not argue that there has been any change in law. Escobedo has submitted no evidence in support of the Motion to Reconsider, much less **new** evidence, and has not cited to a clear error of law. The Motion to Reconsider simply repeats arguments raised in Escobedo's Objection, which this Court has already considered and rejected. Rule 59(e), as incorporated by Rule 9023, cannot be used as vehicle to relitigate issues that have already been briefed, argued, and decided. *Lazarandis v. Wehmer*, 591 F.3d 666 at 669.

10.  Escobedo's argument that additional discovery is appropriate to determine the hypothetical royalty that would have been paid by THQI to Escobedo (Motion to Reconsider at 3) must be rejected for three independently sufficient reasons. First, Escobedo made the same argument in Escobedo's Objection at 19, and fails to present any new facts or legal authorities in support of the very same request. Second, a showing that discovery may be warranted would be insufficient to justify reconsideration of the merits of the Order. In *Blystone v. Horn*, 664 F.3d at 416 n.14, the movant "argue[d] that the District Court erred in denying the Rule 59(e) motion because he set forth sufficient facts to warrant discovery." The Third Circuit held that the evidence purportedly supporting additional discovery was "not newly discovered." *Id.* Similarly, Escobedo has failed to present any newly discovered evidence in support of his Motion to Reconsider. Third, Escobedo ignores the fact that these streamlined proceedings are for purposes of estimating Escobedo's Claims. Bankruptcy Code section 502(c) provides that

01:14002446.2

5

unliquidated claims shall be estimated when "fixing or liquidation [of the claim] . . . would unduly delay the administration of the case." Discovery at this stage would create unnecessary delay.

11. Even if Escobedo's legal arguments were "new" (which they are not), additional legal arguments would not be a sufficient basis for bringing a Motion to Reconsider. *Fed. Deposit Ins. Corp. v. World Univ. Inc.*, 978 F.2d 10, 16 (1st Cir. 1992) ("Motions under Rule 59(e) must either clearly establish a manifest error of law or must present newly discovered evidence [citation omitted]. They may not be used to argue a new legal theory.") (emphasis added). Therefore, even if the Motion to Reconsider contained new arguments not previously raised in Escobedo's Objection, it would not justify vacating the entered Order.

12. Moreover, every argument in the Motion to Reconsider was previously raised by Escobedo, addressed by THQI, and considered and rejected by this Court. Indeed, the Motion to Reconsider reads like a copy of the transcript of the hearing at which Escobedo's counsel made virtually identical arguments.

13. Escobedo's Motion to Reconsider argues that "[t]he $22,500 is unrelated to the agreed upon test for calculating copyright infringement," because the correct test is a hypothetical negotiation test. (Motion to Reconsider at 2-3.) This is the same argument raised in Escobedo's Objection at 18-19. THQI's expert used multiple techniques to estimate the value Escobedo's claim, including the hypothetical negotiation test. As explained by Wunderlich, he used the income approach, market approach, and cost to re-create method of estimating the value of a copyright license (each of which were used in his analysis) in order to determine the outcome of a hypothetical negotiation. (Declaration of Robert Wunderlich, "**Wunderlich Dec.**", [D.I. 784-Ex. 3 at ¶¶ 18-35.])

01:14002446.2

6

14. Escobedo's Motion to Reconsider then argues that Wunderlich purportedly "ignored multiple relevant facts." (Motion to Reconsider at 3.) This simply repeats Escobedo's argument in his Objection that "Mr. Wunderlich's opinion is based on erroneous facts and assumptions." [D.I. 867 at 22.] It rehashes the same debate between the expert witnesses that this Court has already considered.

15. Escobedo misrepresents to this Court that Mr. Wunderlich allegedly testified that "the hypothetical negotiation between THQ and Escobedo would have yielded the same flat fee that the actual contract between UFC and Condit yielded." (Motion to Reconsider at 3.) In reality, Mr. Wunderlich testified that the hypothetical negotiation would have yielded a far smaller royalty payment: "the value of Mr. Escobedo's copyright infringement claim must be less than, and likely significantly less than, $22,500, the total compensation paid by THQ to Mr. Condit." (Wunderlich Dec. at ¶ 11 (emphasis added). *See also* Wunderlich Dec. at ¶ 25 ("the compensation that would properly be attributable to including the Lion Tattoo on Mr. Condit's avatar would likely be significantly less than $22,500") & ¶ 35 ("the value of Mr. Escobedo's copyright infringement claim must be less than, and likely significantly less than, $22,500, the total compensation paid by THQ to Mr. Condit").) The Supplemental Wunderlich Declaration also focuses on other licenses, not simply what Condit was paid. The effort to mischaracterize Mr. Wunderlich's testimony or this Court's ruling as being based solely on what Mr. Condit was paid is unfounded.

16. The Motion to Reconsider then argues that THQI's use of song licenses as a reference point to estimate the value of Escobedo's claim is of limited relevance and that Mr. Wunderlich's analysis of such licenses is "tortured." This argument is not new. At page 24 of the transcript, counsel for Escobedo argued that, "If you look at Mr. Wunderlich's chart it is a

01:14002446.2

tortured analysis." This Court rejected this meritless assertion, and Escobedo's attempt to raise it again in the Motion to Reconsider is frivolous.

17. The Motion to Reconsider then argues that THQI's use of song licenses as a reference point to estimate the value of Escobedo's claim is of limited relevance. It was Escobedo's own expert who initially used song licenses as a reference point to estimate the value of Escobedo's claim. (Declaration of Garry Kitchen, D.I. 867-13 at 27.) The Debtors disclosed and analyzed song licenses to rebut Escobedo's expert with accurate and more relevant information—in particular, the cost of song licenses actually used in THQI's games. (Wunderlich Dec. at 4-5.) As Mr. Wunderlich noted, "[T]he sole basis for Mr. Kitchen's [Escobedo's expert] valuation analysis appears to be his estimate of the royalty rate to license songs or other music for inclusion in a video game." (*Id.* at 3 (emphasis added).) Escobedo's Motion to Reconsider effectively argues that Escobedo's expert's sole "comparable" supporting his outrageously high estimated royalty was irrelevant.

18. Escobedo now argues that song licenses are a poor analogy (despite Escobedo's expert's exclusive reliance on song licenses as the only relevant analogy), arguing that songs "are played for only seconds, not minutes and certainly not fifteen minutes." (Motion to Reconsider at 4).[4] This is not a new argument. At the hearing Escobedo argued that :

> If you choose Mr. Condit as your player it is on the screen prominently displayed for over 15 minutes just in the first level of the game. Then if you, you know, proceed to the next level, I don't know because I never got there, but if you proceed to the next level I would assume you could choose your same avatar. So we are not talking about a blip of 30 seconds or a minute of a song playing, we're talking about 15 minutes of a prominent feature.

---

[4] There is no evidence to support the assertion regarding how long Mr. Condit's likeness is on screen, when or to what extent to the Lion Tattoo is visible, or how long songs play. Condit is only one of more than 100 fighters in the game.

19. Assuming, for purposes of argument, that this Court were to consider the issues presented by the Motion to Reconsider *de novo*, the Court should still deny the Motion to Reconsider. THQI will not burden the Court with the same responses already submitted when Escobedo first raised the very same arguments in his Objection, but rather hereby incorporates by reference its arguments in the Motion to Estimate and the reply [D.I. 894].

20. As THQI demonstrated, the value of Escobedo's claim must be reduced to reflect (a) the exceedingly low value of a license of a single tattoo to a game depicting more than a hundred fighters, hundreds of tattoos and songs, and myriad other creative elements, (b) the likelihood that a tattoo on another person's body is not copyrightable, (c) the likelihood that Condit has an implied license to license to THQ his own digital image (including an image of the Lion Tattoo), without restriction by a tattoo artist; and (d) the likelihood that, if the Lion Tattoo is copyrightable, Condit would have to at least be considered a joint author of the tattoo with an equal right to license it to others. Therefore, the Court properly determined that the uppermost estimation of Escobedo's Claim should be the amount paid by THQI to Condit, which was $22,500.

C. **The Court Should Correct the Clerical Error in the Order**

21. Rule 9024 incorporates by reference Fed.R.Civ.P. 60, including 60(a), which provides that, "The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record. The court may do so on its own motion, with or without notice."

22. The original Motion to Estimate addressed only the Unsecured Claim, because the Debtors were not aware that Escobedo had filed the unliquidated Administrative Claim. The proposed form of order submitted with the original Motion to Estimate listed only the Unsecured Claim. The Supplemental Estimation Motion corrected this oversight and submitted an

01:14002446.2

9

alternative form of order. After the Court announced its decision to estimate Escobedo's Claims at no more than $22,500, the Debtors inadvertently submitted the proposed form of order filed with the Motion to Estimate, instead of the updated form of order filed with the Supplemental Estimation Motion. The Debtors respectfully request that this Court exercise its power to correct this clerical mistake.

## Conclusion

23. For the reasons enumerated above, the Debtors respectfully request that the Court deny Escobedo's Motion to Reconsider and correct the clerical mistake in the Order by entering the form of order attached hereto as Exhibit "A".

Dated:  August 12, 2013
        Wilmington, Delaware

        */s/ Jaime Luton Chapman*
        Michael R. Nestor (No. 3526)
        M. Blake Cleary (No. 3614)
        Jaime Luton Chapman (No. 4936)
        YOUNG CONAWAY STARGATT & TAYLOR, LLP
        Rodney Square
        1000 North King Street
        Wilmington, Delaware 19801
        Telephone: (302) 571-6600
        Facsimile: (302) 571-1253

        -and-

        Oscar Garza (CA No. 149790)
        Jeffrey C. Krause (CA No. 94053)
        GIBSON, DUNN & CRUTCHER LLP
        333 South Grand Avenue
        Los Angeles, California 90071-1512
        Telephone: (213) 229-7000
        Facsimile: (213) 229-7520

        *Counsel to the Debtors*

01:14002446.2